# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Savannah Division

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
**By dreese at 4:32 pm, Feb 12, 2016**

In the matter of:

JIMMY GLYNN FOREHAND,

*Debtor.*

ASSOCIATED MAINTENANCE
SERVICES, INC. d/b/a SAVANNAH
PROFESSIONAL MAINTENANCE and
JACK FOREHAND
*Movants,*

v.

JIMMY GLYNN FOREHAND,

*Respondent.*

Chapter 13 Case

Number 15-41980

---

## OPINION ON MOVANTS' MOTION FOR RELIEF FROM AUTOMATIC STAY

Before the Court is the Motion for Relief from Automatic Stay ("Relief Motion") (dckt. 12) filed by Associated Maintenance Services, Inc. d/b/a Savannah Professional Maintenance ("Associated Maintenance") and Jack Forehand ("Jack") (collectively "Movants"). Movants request that the automatic stay be lifted so that they can pursue their remedies, including the enforcement of an injunction, against the debtor, Jimmy Glynn Forehand (the "Debtor" or "Glynn") in a state court action relating to an alleged breach of the Debtor's Agreement Not to Compete ("Non-Compete Agreement"). The Debtor opposes the Relief Motion. The Court held an expedited hearing on the Relief Motion on

December 15, 2015. At the conclusion of the hearing, the Court took the matter under advisement. For the reasons set forth below, the Court grants the Relief Motion.

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(G) (providing that core proceedings include "motions to terminate, annul, or modify the automatic stay"). In accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure, the Court makes the following Findings of Fact and Conclusions of Law.

## II. FINDINGS OF FACT

### A. Procedural History

This case involves an unfortunate business dispute between two brothers, Jimmy Glynn Forehand (the Debtor) and Jack Forehand (a Movant), who had worked together at Associated Maintenance for almost 40 years. That dispute culminated in a lawsuit filed by Jack and Associated Maintenance against the Debtor (and certain third-parties) in the Superior Court of Chatham County, Georgia (Civil Action No. CV15-0291-WA) on March 10, 2015 ("state court litigation"). According to the state court complaint, the Debtor was terminated from his employment with Associated Maintenance for, among other things, violating the terms of his Non-Compete Agreement with the company. (Dckt. 12-2, 19). The state court entered an Order for Interlocutory Injunction ("Interlocutory Injunction") on March 20, 2015, which essentially enforced the terms of the Debtor's Non-Compete Agreement. (Dckt. 12-3). On October 15, 2015, Movants filed their Plaintiff's Petition for

Contempt ("Contempt Motion") in the state court litigation contending that since the entry of the Interlocutory Injunction, the Debtor has continued to violate the Non-Compete Agreement. (Dckt. 12-6). The Contempt Motion was set to be heard in state court on December 10, 2015.

On December 1, 2015, Debtor filed his Chapter 13 petition and plan. (Dckt. 1, 2). The Debtor listed both Jack and Associated Maintenance among his unsecured creditors, but labeled their claims as unliquidated and contingent. (Dckt. 1, p. 23, 30). In addition, the Debtor's proposed plan makes no reference to the Movants' claims (e.g. proposing a rejection of an executory contract), and, to date, the Movants have not yet filed proofs of claim.

On December 9, 2015, one day prior to the previously scheduled hearing on the Contempt Motion in the state court litigation, the Movants filed their Relief Motion and sought an expedited hearing, which the Court scheduled for December 15, 2015.

B. Background of the Non-Compete Agreement

Associated Maintenance is a Georgia corporation that provides janitorial and other cleaning services to commercial establishments primarily in Chatham, Effingham and Bryan Counties. It was founded by Jack Forehand 43 years ago and has been doing business in Chatham County at all times since its inception. The Debtor, Jack's younger brother, was an employee of Associated Maintenance and intimately involved in the operation of its business for 38 years. The Debtor's duties included activities in sales and operations of the company. As is typical with many family businesses, both the Debtor and Jack had an

ownership interest in the company, with Jack owning 8,976 shares (88%) and the Debtor owning 1,224 share (12%).

In December 2012, the brothers agreed to enter into a Stock Sale and Purchase Agreement ("Stock Purchase Agreement") that would transfer sole ownership of the company to the Debtor. (Dckt. 12-2, p. 17). The Stock Purchase Agreement provided that the Debtor would purchase 1,000 shares of Associated Maintenance stock from Jack in exchange for an initial sum of $40,000.00 and a promissory note ("Stock Note") in the amount of $60,000.00. (*Id.* at p. 23). As collateral for the Stock Note, the Debtor pledged all common stock shares he owned in Associated Maintenance, including the stock purchased as part of the Stock Purchase Agreement. (*Id.* at p. 25). Contemporaneously with the stock purchase, Associated Maintenance redeemed the remainder of Jack's stock in the company by executing a promissory note payable to Jack in the amount of $797,600.00. (*Id.* at p. 34). As a result of these transactions, the Debtor became the sole owner of all the outstanding shares of stock of Associated Maintenance, a company which now owed $797,600.00 to the Debtor's older brother, Jack.

In addition to the Stock Purchase Agreement, the Debtor signed the Non-Compete Agreement, which prevented the Debtor, in the event of a default on the Stock Note, from soliciting Associated Maintenance's customers for a period of two years. (*Dckt.* 12-1). Specifically, the Non-Compete Agreement stated that the Debtor may not:

> (i) directly or indirectly solicit, for remuneration, contracts or arrangements for maintenance and cleaning service or carpet-cleaning services competitive with the Company's maintenance and cleaning service or carpet-cleaning service within [the county limits of Chatham County, Effingham County, and Bryan County], or participate in any sales, production, or management with respect to any such service

on behalf of a(n) [Associated Maintenance] customer within said geographical area in competition with the said business of [Associated Maintenance]; or

(ii) directly or indirectly divulge the terms and conditions of any service contract or service arrangement between [Associated Maintenance] and a[n] [Associated Maintenance] Customer as of the [date of notice of default on the Stock Note], all terms and conditions of which shall be, and shall be deemed to be strictly confidential during said (2) year period thereafter, or

(iii) urge or actively encourage, directly or indirectly, any [Associated Maintenance] Customer within [the county limits of Chatham County, Effingham County, and Bryan County] for whom [Debtor] shall have personally rendered services from the date of this Agreement to discontinue [Associated Maintenance's] services, in whole or in part; or

(iv) directly or indirectly recruit or hire, or attempt to recruit or hire, within [the county limits of Chatham County, Effingham County, and Bryan County], any employee of [Associated Maintenance] as of the [date of notice of default on the Stock Note] for services comparable to those rendered by such person for [Associated Maintenance].

(Dckt. 12-1, p. 2). In the event of a breach of these covenants, the Movants were entitled to both monetary and equitable remedies. Specifically, the Non-Compete Agreement provided:

6. In the event [the Debtor] breaches any of these covenants, he agrees immediately to inform [Jack] and [Associated Maintenance], to account timely and in detail to them, and to pay promptly to [Associated Maintenance] all gross receipts attributable to his services rendered in breach of his covenant. The parties acknowledge that they have bargained in good faith with respect to this provision and have mutually determined the same to represent a fair and conservative amount of liquidated damages to compensate [Associated Maintenance] for the least possible detriment that could reasonably expected to accrue to its business from any such competitive act.

8. [The Debtor] acknowledges that a breach by him of any part of this Agreement would result in irreparable and continuing damage to [Associated Maintenance] for which there will be no adequate remedy at law. Therefore, in addition to any other available remedy, any such breach or threatened breach shall be subject to specific performance by temporary as well as permanent injunctions, restraining orders, or any other equitable remedies of any court of competent jurisdiction. . . [the Debtor] hereby consents to such specific performance and to jurisdiction of the Superior Court of Chatham County, Georgia over the matter.

(Dckt. 12-1, p. 3).

After two years at the helm of Associated Maintenance, the Debtor defaulted on the terms of the Stock Note. On December 22, 2014, the Debtor executed documents assigning his shares of stock to Jack. (Dckt. 12-2, p. 40). As a result, Jack became the sole shareholder and resumed management of Associated Maintenance, but retained the Debtor as an employee. The default also caused the terms of the Debtor's Non-Compete Agreement to become effective.

C. State Court Litigation

In support of their various causes of action, the Movants allege in their state court Complaint as follows:

> 19.
> During the two year period of time that [the Debtor] acted as President of [Associated Maintenance] and retained ownership and control of the operations of [Associated Maintenance], [the Debtor] committed acts of fraud, conversion, breaches of the [Stock Purchase Agreement] and breaches of fiduciary duties owed to [Movants]. Furthermore, since the time of the default and assignment of the shares of stock, [the Debtor] has continued to be an employee of [Associated Maintenance]. During this period of employment, [the Debtor] has continued to commit acts of fraud, conversion, breaches of fiduciary duties, and violated the [Non-Compete Agreement].
>
> 20.
> Since his termination, [the Debtor] has also violated the terms of the [Non-Compete Agreement]. . . .

(Dckt. 12-2, p. 6).

Before and after the Debtor conveyed his stock back to Jack, Movants allege he syphoned money away from Associated Maintenance by instructing customers to send payments for services to other entities owned by the Debtor and converting cash payments from customers for personal use. As a result of this diversion of revenues, Movants contend that Associated Maintenance was unable to meet its expenses, which forced Jack to use his

AO 72A
(Rev. 8/82)

personal funds to make payroll and pay corporate income tax. On March 2, 2015, Jack discovered the alleged misconduct and dismissed the Debtor from his employment with Associated Maintenance.

After terminating Debtor's employment, Movants initiated the state court litigation seeking damages and enforcement of the Non-Compete Agreement. The state court complaint contained several counts, including breach of the Non-Compete Agreement and employment contract (Count One), unfair or deceptive business practices in violation of O.C.G.A. § 10-1-393 (Count Two), breach of fiduciary duty in violation of O.C.G.A. § 14-11-305 (Count 3), tortuous interference with contractual relations (Count 4), fraud and deceit (Count 5), unjust enrichment (Count 6), and Georgia RICO violations (Count 7). (Dckt. 12-2). On March 11, 2015, the Debtor was served[1] with the Summons and Complaint and given notice of a scheduled hearing on the Plaintiffs' request for an interlocutory injunction to enforce the terms of the Non-Compete Agreement. The Debtor failed to appear at the hearing and the state court entered the Interlocutory Injunction ordering the Debtor to comply with the terms of the Non-Compete Agreement. (Dckt. No. 12-3). Notwithstanding the issuance of the Interlocutory Injunction, Movants now allege that the Debtor continued to breach the Non-Compete Agreement and violated the terms of such injunction.

D. Movant's Petition for Contempt in State Court

On October 15, 2015, Movants filed their Contempt Motion in the state court litigation contending that since the entry of the Interlocutory Injunction on March 20, 2015,

---

[1]As of the hearing on December 15, 2015 in this Court, the Debtor had not filed an answer in the state court litigation and is in default.

the Debtor has engaged in janitorial cleaning services in Chatham County and other counties covered in the Non-Compete Agreement. The Contempt Motion asserted that the Debtor violated the terms of the Interlocutory Injunction by soliciting and providing services to one of Associated Maintenance's customers, Executive Court Partnership, in June 2015. The Contempt Motion also asserted that the Debtor, through his company Suncoast Facility Services ("Suncoast"), solicited and received payment for janitorial services from Dan Vaden Chevrolet, a car dealership located in Chatham County, Georgia.

In their prayers for relief in the Contempt Motion, the Movants sought the following:

> a. [The state court] issue a Show Cause Order directed to Defendant Glynn Forehand requiring him to show cause as to why he should not be held in Contempt of Court for violation of [the state court's] Order of March 20, 2015;
>
> b. That upon a hearing of the Show Cause Order, [the state court] inquire into the issue and find that Defendant Glynn Forehand has willfully and maliciously violated [the state court's] Order of March 20, 2015;
>
> c. That [the state court] Order Defendant Glynn Forehand to disgorge all payments received in violation of [the state court's] Order;
>
> d. That [the state court] take appropriate action to sanction Defendant Glynn Forehand for his violation of [the state court's] Order dated March 20, 2015;
>
> e. That [the state court] award the Plaintiff's attorney's fees for the necessity of bringing this Petition for Contempt.

(Dckt. 12-6, p. 7). The state court scheduled a hearing on the Contempt Motion for December 10, 2015. (Dckt. 12-6).

E. Motion for Relief From Automatic Stay

On December 1, 2015, prior to the Contempt Motion hearing, the Debtor filed his Chapter 13 case, invoking the automatic stay provisions of 11 U.S.C. § 362(a). On

December 9, 2015, the Movants filed their Relief Motion and Motion to Expedite Hearing in this Court. Specifically, the Movants seek relief from the automatic stay "to pursue their remedies against the [Debtor] in the [state court litigation] relating to the breach of the [Non-Compete Agreement] and the causes of actions as stated in the Complaint in [the state court litigation]." (Dckt. 12, p. 4).

F. Hearing on the Relief Motion

On December 15, 2015, the Court held a hearing on the Relief Motion. At the hearing, the Debtor acknowledged the accuracy and authenticity of the various documents attached to the Relief Motion and for purposes of this opinion, the Court will recite from the Relief Motion and its attached exhibits.

At the hearing, the Movants argued that they are entitled to proceed with their state court litigation to enforce the Interlocutory Injunction because they are suffering irreparable harm from the Debtor's continued violation of the Non-Compete Agreement. The Movants further contended that relief from the stay was appropriate because the Non-Compete Agreement is not an executory contract that could be rejected by the Debtor under 11 U.S.C. § 365[2]. The Debtor argued that relief from the stay should be denied because a request for injunctive relief must be brought in an adversary proceeding pursuant to Federal

---

[2]At the hearing, the Debtor took the position that the Non-Compete Agreement is an executory contract, but conceded that this issue is a matter that should be taken up if and when the Debtor files the appropriate motion to reject the Non-Compete Agreement. Accordingly, the Court will not address whether or not the Non-Compete Agreement is an executory contract at this time.

Rule of Bankruptcy Procedure 7001(7)[3]. The Debtor further contended that if this Court grants relief from the stay and allows the Interlocutory Injunction to be enforced, it would effectively destroy the Debtor's ability to fund his Chapter 13.

The Court heard testimony from three witnesses regarding the Debtor's alleged violation of the Non-Compete Agreement: the Debtor, Jack Forehand, and Jason Hagan, the director of facilities for Dan Vaden Automotive Group. The Court first heard testimony from Mr. Hagan who testified that in February 2015, the Debtor, before his termination, submitted a proposal on behalf of Associated Maintenance to provide janitorial services at Dan Vaden Chevrolet which is located in Chatham County, Georgia. (Dckt. 25, p. 30). At that time, Dan Vaden decided not to do business with Associated Maintenance. (*Id.* at p. 39). In July 2015, however, Mr. Hagan contacted the Debtor, who was now working for Suncoast, to revisit the February proposal. (*Id.* at p. 36). Ultimately, Dan Vaden and Suncoast were able to agree to terms and Suncoast began providing janitorial services for two of Dan Vaden's locations, including Dan Vaden Chevrolet. *Id.* As of the date of the hearing, Suncoast was still providing janitorial services for Dan Vaden Chevrolet. (*Id.* at p. 35).

Next, the Court heard testimony from the Debtor who testified that Suncoast was formed in July 2015 for the purpose of providing janitorial services and is owned by Steve McElhanon. (*Id.* at p. 51). The Debtor further testified that he acted as a consultant to Mr. McElhanon in the formation of the company. *Id.* The Debtor also testified that in August

---

[3]Rule 7001(7) is not applicable in this case because the Movants are not requesting that this Court enter any injunctive relief, rather they are requesting relief from this Court to pursue enforcement of an injunction that was granted by a state court.

or September of 2015 he sent, on behalf of Suncoast, a proposal to Carolina Dredging Company to provide janitorial services at its office in Chatham County, Georgia. (*Id.* at p. 46). The Debtor further testified that he never solicited business from Carolina Dredging Company during his employment with Associated Maintenance. *Id.*

At the hearing, Movants sought stay relief for the narrow purpose of enforcing the state court's Interlocutory Injunction. As stated above, however, the Movants' Relief Motion requested broad stay relief "to pursue their remedies against the [Debtor] in the [state court litigation] relating to the breach of the [Non-Compete Agreement] and the causes of actions as stated in the Complaint in [the state court litigation]." (Dckt. 12, p.4). As will be explained, this Court finds it appropriate to grant the Movants relief from the automatic stay to continue the pursuit of their Contempt Motion to the extent necessary to enforce the Interlocutory Injunction, to seek permanent injunctive relief, and to liquidate their pre-petition[4] claims against the Debtor to the extent such claims support any claim they may file in this case.

## III. CONCLUSIONS OF LAW

This case requires the Court to examine the impact of the Debtor's bankruptcy filing on the pending state court litigation, and more particularly, on the Non-Compete Agreement executed by the Debtor in favor of Associated Maintenance. Covenants not to compete have been the subject of numerous reported bankruptcy decisions particularly in the context of motions for stay relief. As discussed below, often these cases focus on whether

---

[4] Movants may also liquidate their post-petition claims against the Debtor, if any.

the former employer's right to seek injunctive relief to enforce the covenant is a "claim" and how that determination affects a request for stay relief. The Court will address in some detail Movants' entitlement to seek injunctive relief but will first summarize all of the potential claims that Jack and Associated Maintenance might assert against the Debtor.

First, Movants have a claim for any damages that flow from the causes of action set forth in their state court Complaint. If all of the Debtor's alleged sins were committed pre-petition, all that remains is to liquidate those claims[5]. As more fully explained below, the Court will permit the Movants to liquidate its pre-petition claims by pursuing a judgment in the state court litigation.

Second, Movants may have a claim for post-petition damages if the Debtor has continued to violate the terms of the Non-Compete Agreement. Because the state court will be determining the scope of any pre-petition damages, the Court will also grant stay relief to allow the parties in that litigation to determine damages, if any, for the Debtor's post-petition conduct. There is no reason why post-petition damages should not be determined in the same state court action because these claims would not, of course, be discharged in the Debtor's chapter 13 case.

Third, the Movants contend they have a right to enforce the Interlocutory Injunction issued by the state court on March 20, 2015. As will be seen, because the Court

---

[5]The Movants must decide, soon, whether they also want this Court to declare those debts non-dischargeable pursuant to 11 U.S.C. § 523. It appears the deadline for filing an adversary to have these and other debts declared non-dischargeable is March 14, 2016. (Doc. 7). Fed. R. Bankr. Pro. 4007

has determined that the right to injunctive relief (or to enforce an existing injunction) is not a *claim* under 11 U.S.C. § 101(5)(B), the Court will grant stay relief to enforce the state court's Interlocutory Injunction.

Fourth, Movants could seek post-petition injunctive relief (e.g. seeking a permanent injunction) to enforce the covenant not to compete. For the same reasons the Court will allow the Movants to seek enforcement of the state court Interlocutory Injunction, the Court will grant stay relief to allow the Movants to seek a permanent injunction.

A. <u>11 U.S.C. § 362 - The Automatic Stay</u>

When a debtor files a bankruptcy petition, an automatic stay applies to the commencement or continuation of legal proceedings against the debtor that were or could have been commenced prior to the commencement of the bankruptcy case. 11 U.S.C. § 362(a)(1). This includes actions seeking injunctive or similar relief as well as actions seeking money judgments. 3 *Collier on Bankruptcy* 362.03[3], p. 362-25 (16th ed. 2013). Congress enacted § 362(a) and its subsections "to give debtors 'breathing room' after filing their petition." *B.F. Goodrich Emps. Fed. Credit Union v. Patterson (In re Patterson)*, 967 F.2d 505, 512 n. 9 (11th Cir.1992). The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws," which "permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *Id.*

Section 362(b) lists certain enumerated exceptions to the automatic stay. In addition to these enumerated exceptions, the bankruptcy court may also grant relief from the

automatic stay, "such as by terminating, annulling, modifying, or conditioning such stay," on "request of a party in interest ... *for cause*, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1) (emphasis added). The term "cause" is not defined in § 362(d)(1) or elsewhere in the Bankruptcy Code. Rather, courts evaluating whether to grant stay relief must determine "cause" based on the totality of the circumstances[6]. *In re George*, 315 B.R. 624, 628 (Bankr. S.D. Ga. 2004) (Davis, J.)

To determine whether to lift the automatic stay so that a party may continue litigation in another forum, most courts balance the hardship to the creditor if the creditor is not allowed to proceed with the lawsuit, against the potential prejudice to the debtor, the debtor's estate, and other creditors. *E.g., In re Carraway Methodist Health Sys.*, 355 B.R. 853, 854 (Bankr. N.D. Ala. 2006). In applying this balancing test, courts in this district have considered the numerous factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)[7]:

> (1) Whether relief would result in a partial or complete resolution of the issues;
> (2) Lack of any connection with or interference with the bankruptcy case;
> (3) Whether the other proceeding involves the debtor as a fiduciary;
> (4) Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) Whether the debtor's insurer has assumed full responsibility for defending it;
> (6) Whether the action involves primarily third parties;
> (7) Whether litigation in another forum would prejudice the interests of other creditors;
> (8) Whether the judgment claim arising from the other action is subject to equitable subordination;

---

[6] The party opposing stay relief has the ultimate burden of disproving the existence of "cause." 11 U.S.C. § 362(g)(2).

[7] These twelve non-exclusive factors are commonly known as the "*Curtis* factors."

(9) Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) The interest of judicial economy and the expeditious and economical resolution of litigation;
(11) Whether the parties are ready for trial in the other proceeding; and
(12) Impact of the stay on the parties and the balance of harms.

*In re R.J. Groover Constr., L.L.C.*, 411 B.R. 460, 464 (Bankr. S.D. Ga. 2008).

In addition, although a more convenient forum is not one of the enumerated grounds for relief from stay in § 362(d), the legislative history of the section suggests that such a forum is "cause" under § 362(d)(1):

[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere.

*In re Johnson*, 153 B.R. 49, 51 (Bankr. D. Idaho 1993) (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836).

The Court will apply the *Curtis* factors to determine to whether the automatic stay may be lifted so that the Movants may continue to pursue their injunctive and monetary remedies against the Debtor in the state court litigation. However, as mentioned above, the Court must first determine whether the Movants' right to injunctive relief constitutes a "claim" under the Bankruptcy Code. As will be shown, this determination will have an effect on the Movants' request for relief from the stay to pursue their injunctive remedies in the state court litigation.

B. The Right to Injunctive Relief is Not a "Claim"

Under the Bankruptcy Code, a "debt" is a liability on a "claim." 11 U.S.C. § 101(12). Under § 101(5), a "claim" means:

(A) right to payment . . . or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

In *Ohio v. Kovacs*, 469 U.S. 274, 105 (1985), the Supreme Court engaged in a lengthy discussion of the meaning of the term "claim" as provided in § 101(5)(B). After considering the legislative history, the Supreme Court held that an injunction giving rise to a payment of money is a claim. *Id.* at 283. In *Kovacs*, the State of Ohio obtained a state court judgment against the debtor for violations of environmental laws at a hazardous waste disposal site. The judgment included an injunction to clean up the site. When the debtor failed to comply with the judgment, Ohio sought appointment of a receiver who took possession of the property and began to clean up the site. After the appointment of the receiver, the only performance Ohio sought from Kovacs was the payment of money to effectuate the cleanup. The Court found that this effectively converted the cleanup order into a demand for money damages. Thus, the Court found that since the cleanup order gave rise to a payment of money, it was a "claim" dischargeable in bankruptcy. *Id.*

The majority of courts have held a right to equitable relief of a covenant not to compete is not dischargeable in bankruptcy. These cases, relying on *Kovacs*, have held that such a right is not a "claim" because compliance does not require the expenditure of money. *See Matter of Udell*, 18 F.3d 403 (7th Cir. 1994); *Kennedy v. Medicap Pharmacies, Inc. (In re Kennedy)*, 267 F.3d 493 (6th Cir. 2001); *In re Gilpin*, 391 B.R. 210 (B.A.P. 6th

Cir. 2008); *In re Hruby*, 512 B.R. 262 (Bankr. D. Colo. 2014). This Court concurs with the analysis that appears in *Kennedy*, 267 F.3d at 496-97 and *Udell*, 18 F.3d at 406-408.

In *Udell*, the court found that the right to equitable relief for breach of a covenant not to compete was not dischargeable. Although the contract in *Udell* contained a liquidated damages clause and a covenant not to compete, the court concluded that the availability of liquidated damages did not render the right to equitable relief a claim.

> In light of *Kovacs*, *Home State Bank* and the legislative history of § 101(5)(B), we hold that a right to an equitable remedy for breach of performance is a "claim" if the same breach also gives rise to a right to payment "with respect to" the equitable remedy. If the right to payment is an "alternative" to the right to an equitable remedy, the necessary relationship clearly exists, for the remedies would be substitutes for one another.

*Udell*, 18 F.3d at 408. Put another way, the right to equitable relief constitutes a claim only if it is an alternative to a right to payment or if compliance with the equitable order will itself require the payment of money. *Kennedy*, 267 F.3d at 497.

In this case, the Non-Compete Agreement provides for liquidated damages and injunctive relief in the event of the Debtor's breach of the covenant not to compete. However, like in *Udell*, the injunctive relief and the liquidated damages are cumulative, not alternative, because they address entirely separate remedial concerns. The injunctive relief represents a remedy for any future breach of the Non-Compete Agreement, while the liquidated damages represent a separate remedy for the actual harm that has already accrued from any breaches of the covenant not to compete. Therefore, under the rationale of *Kennedy* and *Udell*, the injunctive relief that the Movant seeks in the state court litigation does not constitute a dischargeable claim in the Debtor's bankruptcy case.

✎AO 72A
(Rev. 8/82)

C. Stay Relief to Pursue Injunctive Relief

Although this Court finds the Movants' right to injunctive relief is not a dischargeable "claim," the Court must still decide whether "cause" exists under 11 U.S.C. § 362(d) to grant Movants relief from the stay to enforce the Interlocutory injunction or to seek a permanent injunction in state court. *Hruby*, 512 B.R. at 267 (holding that whether or not injunctive rights are a claim is not necessarily dispositive but, if such rights amount to dischargeable debts, the case for relief is "hardly compelling"); *Udell*, 18 F.3d at 410 (reversing the district court's finding that an injunction was a claim, but explaining that "[i]t does not necessarily follow that [the company] is entitled to relief from the stay").

As explained above, in determining "cause" under § 362(d)(1), courts consider the totality of the circumstances in each particular case. Based on the totality of the circumstances, the Court concludes that the automatic stay will be lifted in order for the Movants to pursue their right to an injunctive remedy, including the enforcement of the state court's Interlocutory Injunction and the pursuit of a permanent injunction.

The Court finds the twelfth *Curtis* factor (impact of the stay on the parties and the balance of harms) particularly relevant in determining whether stay relief is appropriate to pursue injunctive relief. From the Debtor's perspective, the harm to both the Debtor and the estate is potentially severe if the Movants are allowed to enforce their injunctive rights. At the hearing on December 15, 2015, the Debtor argued that his competition with Associated Maintenance represents his only source of income. A restraint on that income would make it very difficult for the Debtor to successfully perform a Chapter 13 plan.

However, this reasoning does not warrant denial of relief from the stay. *In re Hohol*, 141 B.R. 293, 299 (M.D. Pa. 1992) (finding that if the debtor is breaching his non-dischargeable obligation not to compete, the fact that enforcement of that obligation may deprive him of his only source of income "is of no moment"). Further, if this Court were to deny stay relief, the Movants would be deprived of their rights and opportunity to enforce the restrictive covenant because the Non-Compete Agreement will expire by its own terms during the life of the Debtor's proposed plan. Thus, the Movants can only receive the benefit of their bargain with the Debtor if the Court lifts the stay now. As a result, this Court concludes that the potential harm to the Movants outweighs the potential harm to the Debtor which may flow from granting relief to obtain injunctive relief.

The first (partial or complete resolution of the issues) and eleventh (whether the parties are ready for trial in the other proceeding) *Curtis* factors also weigh in favor of granting stay relief. The Movants have already filed their Contempt Motion seeking to enforce the state court's Interlocutory Injunction. A hearing had been set for the Contempt Motion on December 10, 2015. However, the Debtor filed his petition on December 1, 2015, which stayed any further proceedings on the Contempt Motion. If the Court grants Movants relief to seek their injunctive relief, all that would remain is to reschedule the previously set contempt hearing. At such hearing, the state court will determine that Debtor has either violated the Interlocutory Injunction or has not, thus providing at least a complete resolution of the Movants' Contempt Motion. The pursuit of permanent injunctive relief may take longer, but that fact does not persuade the Court that the automatic stay should not be lifted.

Further, in the circumstances of this case, where the issue is whether an injunction already issued by a state court has been violated, it is more appropriate for such court to determine whether its own injunction has been violated. *See Kanayama v. KESY, LLC*, No. 14 Civ. 3405(JFK), 2015 WL 1433203 at *7 (S.D.N.Y. 2015) (finding the "principles of comity suggest that the state court is in the better position to interpret and enforce its own injunction"); *Brennan v. Winters Battery Mfg. Co.*, 531 F.2d 317 (6th Cir.1975) (no person should be subject to contempt jurisdiction of court of appeals unless he has violated an order of the court of appeals). The court that issues an order, here the Superior Court of Chatham County, Georgia, is in the best position to determine whether a party should be held in contempt for violating the court's order.

For the foregoing reasons, it is the conclusion of this Court that pursuant to 11 U.S.C. § 362(d), relief from the stay should be granted to the Movants to pursue enforcement of the Interlocutory Injunction, to the extent it does not result in the payment of money by the Debtor, and to seek a permanent injunction, if necessary, in the Superior Court of Chatham County, Georgia.

### D. Stay Relief to Liquidate Claim for Damages

The Court must also determine whether "cause" exists under § 362(d)(1) to grant Movants relief from the stay to liquidate their damages against the Debtor in the state court litigation relating to the breach of the Non-Compete Agreement and the other causes of action asserted in their state court Complaint. In determining whether "cause" exists, the Court will again apply the balancing test and the so-called *Curtis* factors as set forth above.

Regarding the first *Curtis* factor (partial or complete resolution of the issues), lifting the automatic stay would result in the ultimate determination of the Debtor's liability under state law. If Movants succeed in obtaining a judgment against the Debtor, however, it would be necessary for this Court to then determine whether the "debt" resulting from such judgment is non-dischargeable. On the other hand, a determination by the state court that the Debtor is not liable for any damages would result in a complete resolution of the issues. Overall, this factor weighs only slightly in favor of granting relief from the stay.

Other *Curtis* factors, including the fourth (whether a specialized tribunal with the necessary expertise has been established to hear the cause of action), seventh (whether litigation in another forum would prejudice the interests of other creditors) and twelfth (impact of the stay on the parties and the balance of harms) weigh in favor of lifting the stay. First, the Superior Court of Chatham County, Georgia has the necessary expertise in adjudicating the Georgia state law causes of action raised in the state court Complaint and has the ability to accommodate a jury trial demand without additional delay. Second, the interests of other creditors will not be adversely affected in the least since this Chapter 13 case proposes a nominal dividend to unsecured creditors. Last, the interests of judicial economy weigh in favor of proceeding to trial in state court to see if Movants even have a claim against the Debtor.

The eleventh *Curtis* factor (whether the parties are ready for trial in the other proceeding) also weighs in favor of lifting the stay. As of the time of the Debtor's filing, the parties had already started the discovery process in the state court litigation. (Dckt. 12-5).

In addition, Movants have stated that a Motion for Default Judgment against the Debtor in the state court litigation was pending at the time the Debtor filed his bankruptcy petition. If stay relief is granted and the Movants continue the pursuit of their default judgment, a trial on the merits of the case could be avoided.

On balance, many of the *Curits* factors weigh in favor of granting stay relief. Therefore, it is the conclusion of this Court that, pursuant to 11 U.S.C. § 362(d), relief from the stay should be granted to the Movants to continue their state court litigation against the Debtor in the Superior Court of Chatham County, Georgia.

## IV. CONCLUSION

Movants seek relief from the automatic stay to continue their state court litigation against the Debtor for alleged violations of the Non-Compete Agreement and for other causes of action set forth in their state court Complaint. In addition, Movants request that the stay be lifted so that they may pursue their contempt proceeding against the Debtor for alleged violations the state court's Interlocutory Injunction. For the reasons set forth above, the Court finds "cause" under 11 U.S.C. § 362(d)(1) to modify the stay under the following terms:

1) Movants may proceed with the litigation against the Debtor, Jimmy Glynn Forehand, now pending in the Superior Court of Chatham County, Georgia (Civil Action No. CV15-0291-WA), until a final non-appealable judgment[8] is rendered by that court. Movants shall take no action to collect or enforce any part of the judgment unless and

---

[8]It would be in the Movants' best interest to have the finder of fact in the state court litigation differentiate the damages that occurred pre-petition from the damages that occurred post-petition. Otherwise, Movants would have to re-litigate this issue should they choose to file an adversary to have their debt declared non-dischargeable in this case.

until the non-dischargeability of this judgment (or any portion thereof) has been finally decided in the Movants' favor, and the time for the Debtor to appeal such judgment of non-dischargeability has run or such appeal has been finally resolved in the Movant's favor.

2)    Movants may continue the pursuit of their Contempt Motion to enforce compliance with the state court's Interlocutory Injunction to the extent that it would not require the payment of money by the Debtor.

3)    Movants may seek post-petition injunctive relief (e.g. seeking a permanent injunction) to enforce the Non-Compete Agreement.

A separate order will be entered contemporaneously with this Opinion.

Dated at Savannah, Georgia, this 12th day of February, 2016.

Edward J. Coleman, III
United States Bankruptcy Judge
Southern District of Georgia